FILED

MO

8/3/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| H-D U.S.A., LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No.: 21-cv-03294<br><br>Judge: Thomas M. Durkin<br><br>Magistrate Judge: Beth W. Jantz |

**COMBINED MOTION OF ZHANG HEHE (d/b/a COME BROWNIE) TO DISSOLVE-IN-PART THE PRELIMINARY INJUNCTION AND UNFREEZE ASSETS, TO DISMISS UNDER FED. R. CIV. P. 12(b)(2), 12(b)(4), 12(b)(5), 12(b)(6) 20(a)(2) and 21, AND FOR RELEASE OF TRO BOND TO COMPENSATE FOR IMPROVIDENTLY-SOUGHT INJUNCTION**

Defendant Zhang Hehe (d/b/a Come brownie on Amazon.com) ("Come brownie") respectfully submits a combined motion as follows. Come brownie respectfully requests that the Court dissolve in part the Preliminary Injunction, unfreeze Come brownie's assets, dismiss under Fed. R. Civ. P. 12(b)(2), 12(b)(4), 12(b)(5), 12(b)(6) 20(a)(2) and 21 as to Come brownie, and release the bond to compensate Come brownie for an improvidently-sought injunction.

**BACKGROUND**

Plaintiff obtained an *ex parte* temporary restraining order against Come brownie (or Defendant) based on a series of false and conclusory allegations. These include allegations that Come brownie purportedly regularly moves funds from Amazon to offshore accounts (Compl. ¶ 35); and that Come brownie is a willful counterfeiter and infringer (Compl. ¶ 36). None of these allegations are remotely true. Plaintiff submitted declarations in support of its

1

motions, but these declarations merely repeat the conclusory allegations of the Complaint without providing any supporting facts or evidence – and are demonstrably false with respect to Come brownie.

Based on these false statements, Plaintiff obtained a temporary restraining order on June 22, 2021. Plaintiff did not make any effort to serve this order on Come brownie.

Come brownie received notification from Amazon.com on July 01, 2021 that its selling page for one of its many products would be deactivated because of this Court's Temporary Restraining Order. Amazon.com also indicated that Come brownie's entire seller's account is now frozen under that TRO, not just amounts tied to that single affected product. Amazon.com indicated that it would not hear any appeal of this decision, and encouraged contact directly with Plaintiff's counsel. (Exhibit A).

In July, Plaintiff asked the Court to enter a preliminary injunction, but did not tell the Court that it had never served the temporary restraining order, the motion for preliminary injunction, or any notice of a preliminary injunction hearing, on Come brownie. The Court even noted in its minute entry that "[n]o one appeared on behalf of defendants," apparently unaware that Plaintiff hadn't bothered to tell any defendant – or at least Come brownie – about the TRO or even the existence of a lawsuit.

The Court's temporary restraining order is void due to Plaintiff's false statements to the Court. The preliminary injunction is additionally void because it was issued without notice; Rule 65 does not authorize any court to issue preliminary injunctions without notice under any circumstances.

The Complaint contains numerous allegations about "Counterfeit Harley-Davidson Products" supplied from China, and "tactics" of Chinese companies to target the United States

and conceal their plans. The Complaint, however, does not specify a particular fact about a particular defendant that, if taken as true, plausibly alleges trademark infringement.

In particular, the Complaint does not allege any fact or ground about Come brownie that, if true, would lead to a conclusion of trademark infringement. The foundation of Plaintiff's case is its unsubstantiated accusation that all 201 defendants, including Come brownie, are counterfeiters and willful trademark infringers engaging in subterfuge from China or other foreign jurisdictions with lax trademark enforcement systems. The foundation of Plaintiff's case is utterly faulty as to Come brownie. Come brownie is not a counterfeiter trying to conceal its identity. Come brownie is an independent online store operated from China, using the Amazon platform. As set forth more fully below, because Plaintiff's motions in this case were based on the faulty foundational premise that Come brownie is a willful counterfeiter and infringer operating covertly, Plaintiff's entire case as to Come brownie crumbles.

## ARGUMENT

### Dissolution of Preliminary Injunction and Asset Freeze

The Court should dissolve the Preliminary Injunction and asset freeze as to Come brownie because Plaintiff's allegations about Come brownie are false.

The key allegations of Plaintiff's Complaint, and of its motions seeking injunctions, are utterly false as applied to Come brownie. While a court ordinarily takes a plaintiff's allegations as true at the beginning of a litigation, a Plaintiff seeking an *ex parte* TRO has a special duty to the Court to present the Court with accurate information. Plaintiff, and its counsel, have thoroughly violated this duty.

Before addressing Plaintiff's false statements, Come brownie must note a number of significant red flags regarding the underlying merits of Plaintiff's case. The first red flag is

that the Complaint and supporting declarations are entirely conclusory; the declarations, especially, provide very little *factual* information and simply parrot the allegations of the Complaint. While Plaintiff has attempted to make this case look like an ordinary counterfeiting case, it appears this case is *actually* a scheme to shake down hundreds of foreign businesses. The second red flag is that Plaintiff's trademark registrations list *hundreds* of goods. This means the registrations are almost certainly subject to cancellation for non-use, as it is extremely unlikely that Plaintiff is *actually* selling all of these products in commerce in the United States. The third red flag is that Plaintiff has not made any showing that it is actually *using* the marks in commerce in the United States for the *same goods* and services as the accused products – a statutory requirement of calling something a "counterfeit." *See* 15 U.S.C. § 1116(d)(1)(B)(i). Had Plaintiff given Come brownie notice of these proceedings, Come brownie could have easily pointed out these red flags, and demonstrated why Plaintiff is *not* likely to succeed on the merits of any of its claims.

In addition to providing the Court with numerous false statements in their Complaint and injunction motions, Plaintiffs and their counsel *never* provided *any* notice to Come brownie of *anything* relating to this lawsuit prior to obtaining the TRO, Preliminary Injunction Order, and serving the Order on Amazon.com to freeze Come brownie's account balance.

Plaintiff obtained its temporary restraining order on June 22, 2021 and asked the Court to convert that TRO to a preliminary injunction on July 15, 2021. (Dkt. Nos. 9, 30, 31, 35.) The Court noted in its minute order that "[n]o one appeared on behalf of defendants." (Dkt. No. 35.) It turns out, there is a good reason for that. While Come brownie can't speak for the other Defendants, Plaintiff's counsel did not bother serving any papers on Come brownie – not the Complaint, not the TRO, not the Motion for Preliminary Injunction, and not the preliminary injunction itself. (See Declaration of Zhang Hehe ¶ 7).

4

The first indication that Come brownie had of any lawsuit was in June 2021, and was from non-party Amazon. (Exhibit A) The Amazon Notice stated that Come brownie's listing was being removed in response to a "Temporary Restraining Order issued by a Federal Court." The Amazon Notice then referred generally to infringement of another party's "copyright, patent, trademark, design right, database right, or other intellectual property right or other proprietary right" being prohibited. Missing from the Amazon Notice are: (1) the Complaint; (2) the claims being asserted; (3) the District or court that issued the "Temporary Restraining Order" or (4) the case number.

Though Plaintiff did not serve Come brownie with any papers from this litigation, Plaintiff apparently *did* serve Amazon with the TRO and/or Preliminary Injunction. Come brownie did not obtain the Complaint until July 30, 2021, when counsel it consulted obtained a copy from the PACER website. (See Declaration of Zhang Hehe ¶ 76). "Until July 30, 2021, Come brownie did not know where in the United States it was being sued, was unsure of exactly what claims were being made against it and was unsure of who was suing it." (Declaration of Zhang Hehe ¶ 6.). By the time Come brownie received a copy of the Complaint, this Court had granted the Preliminary Injunction Order. (Dkt. 35.) Because of Plaintiff's failure to serve Come brownie, this Court did not have jurisdiction over Come brownie when it entered the Preliminary Injunction Order. Accordingly, the Preliminary Injunction and asset freeze must be dissolved or vacated.

Come brownie argues that there is no legal authority for issuing a preliminary injunction without notice. Rule 65 is crystal clear: "The court may issue a preliminary injunction *only* on notice to the adverse party." Fed.R.Civ.P. 65(a)(1). On this basis alone, the Preliminary Injunction Order should be dissolved against Come brownie.

A Temporary Restraining Order may only issue without notice upon a showing of *specific facts.* Rule 65 is equally clear regarding issuance of a temporary restraining order without notice – the Court may only do so upon a showing of "*specific* facts in an affidavit or a verified complaint." Fed.R.Civ.P. 65(b)(1)(A) (emphasis added). Here, the general allegations submitted by Plaintiff under penalty of perjury are demonstrably false with respect to Come brownie.

Plaintiff's allegations in its Complaint manifestly do not refer to Come brownie, yet Come brownie innocently got swept into the dragnet Plaintiff created. This alone should be sufficient to vacate the asset freeze, but it is worth noting separately that the Court does not have the *authority* to freeze assets that are *not* the proceeds of counterfeiting.

A cursory review of Come brownie's Amazon store, demonstrates that there is a wide variety of products there. A Court's authority to freeze assets is limited to *equitable* remedies, such as an accounting. A Court does not have authority to enter a general purpose asset freeze of funds *not* relating to the alleged counterfeiting. *See SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005) (the proposed asset freeze may extend only to the amount by which Defendants profited from any alleged wrongdoing); *In re Fredeman Litig.,* 843 F.2d 821, 824 (5th Cir.1988) (courts may not freeze a defendant's assets which are unrelated to the underlying litigation). Plaintiff failed to meet its burden, because it has provided no evidence whatsoever that the assets frozen are in any way related to revenues associated with the alleged counterfeiting.

In fact, Plaintiff has not shown a *single sale* of a *single allegedly Counterfeit Harley Davidson Product*. Plaintiff has not proven that a *single* dollar in Come brownie's Amazon account is related to the alleged counterfeiting. Since the district court is not permitted to freeze a defendant's assets solely to preserve a plaintiff's right to recover damages, the asset

freeze in this case is inappropriate. *Grupo Mexicano de Desarrollo, S.A. v. Aliance Bond Fund,* 527 U.S. 308, 325 (1999).

Moreover, an asset freeze is an equitable remedy. Any claim to equity from this Court is barred by Plaintiff's misconduct and its unclean hands.

### Dismissal under Fed. R. Civ. P. 12(b)(2), 12(b)(4), 12(b)(5), 12(b)(6) 20(a)(2) and 21

### Plaintiff's Complaint Should Be Dismissed Under Rule 12(b)(2) Because The Court Lacks Personal Jurisdiction Over Come brownie

"[T]he mechanics for asserting personal jurisdiction in federal court are found in Federal Rule of Civil Procedure 4(k)." *KM Enters., Inc. v. Glob. Traffic Techs., Inc.,* 725 F.3d 718, 723 (7th Cir. 2013). In essence, "federal personal jurisdiction is proper whenever the person would be amenable to suit under the laws of the state in which the federal court sits (typically under a state long-arm statute), subject always to the constitutional due process limitations encapsulated in the familiar 'minimum contacts' test."

Thus, this district Court can exercise personal jurisdiction if it would be permitted to do so under the Illinois long-arm statute. *See* Fed. R. Civ. P. 4(k)(1)(A); *uBID. Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 425 (7th Cir. 2010). There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman,* 134 S. Ct. 746, 753 (2014).

As the Declaration of Zhang Hehe makes clear, indeed, Come brownie does not have any other connections with Illinois (not registered to do business, no office, no employees, and no manufacturer or distribution facility in Illinois). Come brownie does not maintain a separate website and all sales are conducted through Amazon.com. (Declaration of Zhang Hehe at ¶ 2).

The Seventh Circuit Court has held that personal jurisdiction should not be found based only on the sales through an interactive website. *Advanced Tactical Ordnance Sys. v.*

*Real Action Paintball, Inc.,* 751 F.3d 796, 803 (7th Cir. 2014) ("Having an 'interactive website' (which hardly rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend traditional notions of fair play and substantial justice."). The court in *Advanced Tactical Ordnance Sys.* held that the operation of an interactive website does not show that the defendant has formed a contact with the forum state. And, without the defendant's creating a sufficient connection (or "minimum contacts") with the forum state itself, personal jurisdiction is not proper.

Additionally, the U.S. Supreme Court has held before that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *J. McIntyre Machinery, Ltd. v. Nicastro,* 564 U.S. 873, 882 (2011). *J. McIntyre Machinery* was a products-liability action where the defendant, a British company, manufactured a machine that resulted in an injury to a person in New Jersey. The Court held that specific jurisdiction did not exist over the defendant in New Jersey for several reasons. First, the machine was manufactured in England, where the defendant is incorporated and where its principal place of business is located. Second, the defendant did not advertise in, send goods to, or otherwise target New Jersey (an independent distributor sold the machine in question to the plaintiff's employer in New Jersey). Third, only four of the defendant's machines ended up in New Jersey. Fourth, the defendant had no office in New Jersey, it did not own property in there, nor did it pay taxes, advertise in, or send employees to the state.

Finally, it was of little importance that the defendant attended annual conventions in the United States – but not in New Jersey – to market its products.

The Supreme Court specifically noted that, in the context of international defendants, the mere fact that a defendant has an intent to serve the U.S. market—without a showing that the defendant purposefully availed itself of the forum state's market—is insufficient to establish specific jurisdiction.

Here, similar to the British company *J. McIntyre Machinery*, Come brownie did not target Illinois. The Amazon store front Come brownie is operated by a Chinese citizen located in China. (See Declaration of Zhang Hehe at ¶ 2). The alleged complained products were purchased and manufactured in China. Come brownie is not registered to do business in Illinois; has no regular and established place of business in Illinois; does not maintain any offices, employees, or telephone listings in Illinois; has no manufacturing facility or distribution facility in Illinois; has not paid taxes or maintained any bank accounts in Illinois; has not advertised in Illinois; has not participated in any business meetings, seminars, trade shows, or other marketing related activities in Illinois; and does not own any real or personal property in Illinois. Further, Amazon.com handled the ordering, storage and shipping of the products for Come brownie.

Therefore, the same logic and reasoning adopted by the Supreme Court in the *J. McIntyre Machinery* case should apply to this case—because Come brownie did not purposefully target the Illinois market, this District Court lacks personal jurisdiction over Come brownie.

**Plaintiff's Complaint Should Be Dismissed Under Rule 12(b)(4) and 12(b)(5) Because Come brownie Was Improperly Served With Deficient Process**

It is axiomatic that a federal court may issue an injunction only if it has jurisdiction over the parties. *See, e.g., Advanced Tactical,* 751 F.3d at 800 ("In order for the district court's preliminary injunction to be valid, that court had to have personal jurisdiction over the

defendant") (citing *e360 Insight v. The Spamhaus Project,* 500 F.3d 594, 598 (7th Cir. 2007) ("Default judgments rendered without personal jurisdiction are void and, therefore, we shall 'set aside a default judgment as a per se abuse of discretion if the district court that entered the judgment lacked jurisdiction.'")); *Land-O- Nod Co. v. Bassett Furniture Indus.,* 708 F.2d 1338, 1340 (8th Cir. 1983) (confirming that the court must first have jurisdiction before it may exercise its discretion to issue an injunction); 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2941 (1990) ("[T]he Court must have personal jurisdiction over the Party against whom equitable relief is sought"). As set forth more fully below, this Court cannot exercise personal jurisdiction over Come brownie's Amazon Store consistent with the United States and Illinois constitutions. As a result, the preliminary injunction should be vacated because Plaintiff's Complaint against Come brownie should be dismissed for improper service.

Plaintiff filed motion for electronic service of process based on a declaration and circumstances that are not suitable to this present case. (Dkt. Nos. 14 and 20).

Federal Rule of Civil Procedure 4(f) authorizes two methods of service at issue here. First, service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ." Fed. R. Civ. P. 4(f)(1). Second, Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders." Come brownie argues that the Temporary Restraining Order entered in this case did not comply with Rule 4(f)(3) because the Hague Service Convention prohibits e-mail service.

Both the United States and China are signatories to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Service Convention"). The Hague Service

10

Convention has the force of federal law and limits available methods of service under Fed. R. Civ. P. 4(f)(3). Intended to simplify and standardize serving process abroad, the Hague Service Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon,* 137 S. Ct. 1504, 1507 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698 (1988) (noting that "compliance with the Convention is mandatory in all cases to which it applies.")); see also *Brockmeyer v. May,* 383 F.3d 798, 801 (9th Cir. 2004); *Ackermann v. Levine*, 788 F.2d 830, 838 (2nd Cir. 1986)). The "primary innovation" of the Convention is the requirement that each member nation designate a central authority to receive service of process. *Schlunk,* 486 U.S. at 698.

The Convention authorizes service by certain other means, but it does not speak explicitly to service by email and other electronic means. *See Water Splash, 137 S. Ct.* at 1508 (discussing means of service authorized by the Convention). Federal trial courts are divided over whether the Convention limits their authority to authorize service of process by email. *See generally Michael A. Rosenhouse, Annotation, Permissibility of Effectuating Service of Process by Email Between Parties to Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters,* 14 A.L.R. Fed. 3d Art. 8 (West 2019). This Court need not search long for recent persuasive authority finding that service of process by email is unlawful and ineffective under the Hague Service Convention against similarly situated corporate defendants from *China. Luxottica Group S.p.A.,* (ND Ill. May 24, 2019), Memorandum Opinion and Order on Defendants' Motion to Dismiss, pp. 10-14.

Before reaching that question, however, the court must be sure that the Hague Service Convention applies.

## I.     The Hague Service Convention is Clearly Applicable.

The United States and China have both acceded to the terms of the Hague Service Convention. The court looks to Article 1 to determine whether the Hague Service Convention applies. *Schlunk,* 486 U.S. at 699. Article 1 specifies the Hague Service Convention's scope. The first sentence states the "Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." (quoting Article 1 of the Hague Service Convention, 20 U.S.T. at 362). Article 1 further states the Hague Service Convention does not apply "where the address of the person to be served with the document is not known." Art. 1, 20 U.S.T. at 362.

Critically, the Plaintiffs have not established the existence of the foundational prerequisite fact that Come brownie's address is incorrect. Plaintiffs have not not satisfied their burden of coming forward with any evidence of what if any due diligence Plaintiffs or their counsel performed with respect to the accuracy of Come brownie's address information.

Courts have interpreted the second sentence of Article 1 consistently. A plaintiff cannot close its eyes to the obvious to avoid the Hague Service Convention; the plaintiff must make reasonably diligent efforts to learn a defendant's mailing address. *See, e.g., Advanced Access Content Sys. Licensing Admin., LLC v. Shen,* 2018 WL 4757939, at *4–5 (S.D.N.Y. Sept. 30, 2018); *Progressive Se. Ins. Co. v. J & P Transp.,* 2011 WL 2672565, at *3 (N.D. Ind. July 8, 2011) (citing *Opella v. Rullan,* 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011)); *Compass Bank v. Katz,* 287 F.R.D. 392, 394–95 (S.D. Tex. 2012) (collecting and discussing cases).

A generalized suspicion about an address's validity does not make it "unknown" under the Hague Service Convention. Once a plaintiff learns of a defendant's purported mailing address, courts require specific proof of a "reasonable investigation" of the address's validity

before finding that it is "unknown" under Article 1. *Advanced Access,* 2018 WL 4757939, at *5 (citations omitted); *see also Shenzhen Ruobilin Network Tech., Ltd. v. SJG-Lesn,* 2016 WL 6988868, at *1 (W.D. Wis. Nov. 29, 2016); *Blumedia Inc. v. Sordid Ones BV,* 2011 WL 42296, at *2 (D. Colo. Jan. 6, 2011); *Katz,* 287 F.R.D at 395–96; *Progressive Se. Ins. Co.,* 2011 WL 2672565, at *2–3. By way of contrast, a Chinese address has been found to be unknown where the plaintiff hired an investigator in China to determine whether physical addresses associated with domain names were valid and found them to be not so. *Chanel, Inc. v. Song Xu,* 2010 WL 396357, at *1, *3 (W.D. Tenn. Jan. 27, 2010); see also *BP Prods. N. Am., Inc. v. Dagra,* 232 F.R.D. 263, 264 (E.D. Va. 2005).

Neither Plaintiffs nor their counsel can point to any evidence showing that they made any effort, let alone conduct reasonable due diligence, to determine whether they had a correct address for Come brownie. Consequently, the Hague Service Convention absolutely applies in this case.

## II. Service by Email is Inconsistent with the Hague Service Convention and the Internal Laws of China.

Fed. R. Civ. P. 4(f)(3) permits service "by other means not prohibited by international agreement, as the court orders." The Supreme Court has stated that the drafters of the Hague Service Convention intended to prohibit a method of service not mentioned in its text. The Court took a broad view of the Convention in 1988, holding that it "pre-empts inconsistent methods of service . . . [wherever] it applies." *Schlunk, supra,* 486 U.S. at 699. The court reaffirmed that holding, quoting this language verbatim, in 2017. *Water Splash,* 137 S. Ct. at 1507. Indeed, Article 19 "clarifies" the scope of this preemption by providing that the Convention does not preempt signatories' internal laws permitting service by methods the Convention does not allow. Id. at 1508. The Court discussed one such non-enumerated method

in *Schlunk* where it explained that the drafting history of the Convention demonstrated that the delegates wished to prohibit a method of service then allowed in some civil law countries called notification au parquet. *See Schlunk,* 486 U.S. at 703; see also id.at 709–10 & n.1 (Brennan, J.) (concurring in the judgment). Concluding that "[t]here is no question but that the Conference wanted to eliminate notification au parquet," the court pointed to Articles 15 and 16, which do not mention that or any other method of service. As this example shows, the absence of express language prohibiting service by email or any other unlisted means in the Hague Service Convention is not dispositive. The inquiry must be whether email is inconsistent with the service methods the Convention allows. The Hague Convention permits service only by the following means: via a central authority (Articles 2-7), diplomatic and consular agents (Articles 8-9), mail or through a judicial official of the State of destination if the destination State does not object (Article 10), methods allowed by other applicable international agreement (Article 11), and other means as allowed by the internal laws of the destination State (Article 19). *See Water Splash Inc.,* 137 S. Ct. at 1508 (reviewing permitted service methods). "The legal sufficiency of a formal delivery of documents must be measured against some standard. The Convention does not prescribe a standard, so we almost necessarily must refer to the internal law of the forum state." *Schlunk,* 486 U.S. at 700. China's formal objection addresses all forms and methods of service identified under Article 10, including service by mail ("postal channels"). *See* Official Website of the Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (reprinting China's formal opposition to "the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention"); *see also Mapping Your Future, Inc. v. Mapping Your Future Services, Ltd.,* 226 F.R.D. 305, 308 (D.S.D. 2009) ("[T]he court finds that sending

a copy of a summons and complaint by [electronic] mail to a defendant in a foreign country is not a method of service of process permitted by the Hague Convention."). China's formal objection has been held valid. *See DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280 (3d Cir. 1981), cert. den., 454 U.S. 1085. Courts generally approach the problem of email service through the prism of Article 10(a). Article 10(a) says that "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." 20 U.S.T. at 361. Typical of a line of cases is the decision in *Elobied v. Baylock,* 299 F.R.D. 105, 108 (E.D. Pa. 2014). In that case, Switzerland lodged an Article 10(a) objection "oppos[ing] the use in its territory of the methods of transmission provided for" in Article 10 (viz., postal channels). Elobied interpreted this objection as prohibiting service by postal and electronic mail.

This court should find, as District Judge Joan B. Gottschall did in *Luxottica Group S.p.A. v. The Partnership and Unincorporated Associations Identified on Schedule "A",* Case No. 18 CV 2188 (ND Ill. May 24, 2019), Memorandum Opinion and Order on Defendants' Motion to Dismiss (D.E. 131], that Rule 10(a) objections preclude service by email. Because email would bypass the methods of service the Hague Convention authorizes, the Convention preempts it as inconsistent. *See Schlunk,* 486 U.S. at 698. Suppose, as several cases conclude, that Article 10(a) treats email as a type of postal channel. If Article 10(a) uses language broad enough to reach email, it is difficult to see why an objection using Article 10(a)'s language should be given equal breadth. *See Elobied,* 299 F.R.D. at 108; *Mapping Your Future, Inc. v. Mapping Your Future Servs., Ltd.,* 266 F.R.D. 305, 308 (D.S.D. 2009). China's objections are substantially in the form of objections which courts have determined prevent service by email. *See Elobied,* 299 F.R.D. at 108; *Germany, see Agha v. Jacobs,* 2008 WL 2051061, at *1–2 (N.D. Cal. May 13, 2008); and *Mexico, see Katz,* 287 F.R.D. at 396–97. China's objections

likewise preclude email service. *See also Jian Zhang v. Baidu.com Inc.,* 293 F.R.D. 508, 515 n.2 (S.D.N.Y. 2013) (dictum suggesting that email service is not permissible in China). Accordingly, the Hague Service Convention also prohibits service by e-mail in this case. Article 11 of the Hague Convention is inapplicable here because the United States and China have not entered into any other treaty concerning the service of process. Plaintiffs' method of service also clearly does not fall under the scope of Articles 2-9 (i.e., service by a central authority or by consular agents).

Likewise, email service is not permitted under Article 19, because China's internal laws prohibit serving process by e-mail, and prohibit service by website publication unless a plaintiff has exhausted other means of service. *See Art. 87 & Art. 92,* Civil Procedural Law of the People's Republic of China (2017 Am.) ("P.R.C. Civil Procedure Law"). Article 277 of the P.R.C. Civil Procedure Law is dispositive of the issue of prohibiting email service under China's internal laws. It states "no foreign [non-P.R.C.] agency or individual may serve documents . . . within the territory of the People's Republic of China without the consent of the in-charge authorities of the People's Republic of China."; *Rockefeller Tech. Investments (Asia) VII v. Changzhou Sinotype Tech. Co., Ltd.,* 233 Cal. Rptr. 3d 814, 826 (Ct. App. 2018) (quoting the same Article under its prerevision numbering [Article 261] with approval and taking judicial notice of the Article). Plaintiffs' unilateral attempt in this case to serve process in a foreign civil proceeding on Come brownie in China by direct e-mail – without the consent of appropriate local authorities in the P.R.C. – amounts to precisely the type of "self-help" by a foreign party that Article 277 of the P.R.C. Civil Procedure Law would categorically prohibit.

"[T]he validity of service of a document abroad through postal channels depends first on the law of the forum. This is clearly confirmed by the history of the Convention

negotiations . . . ." *Caterpillar Inc. v. Brington Indus. Ltd.,* 112CV01185SLDJAG, 2013 WL 11239258, at \*4 (C.D. Ill. Sept. 27, 2013).14 "[I]n permitting the utilization of postal channels provided the State of destination does not object, the draft convention did not intend to pass on the validity of this mode of transmission under the law of the forum state: in order for the postal channel to be utilized, it is necessary that it be authorized by the law of the forum state." *Brockmeyer v. May,* 383 F.3d at 804 (same). Therefore, Plaintiffs' method of service is prohibited by the Hague Service Convention, and it is insufficient under Fed. R. Civ. P. 4(f)(3) and 12(b)(5).

### Alternatively, Plaintiff's Complaint Should Be Dismissed Under Rule 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), this Court accepts as true all factual allegations in the complaint and draws inferences in a light most favorable to the plaintiff. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 550, 555 (2007), (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557 (internal quotation marks omitted)).

Plaintiff's attempt to stuff over 200 defendants together into a single case has resulted in a vague Complaint that does not satisfy even the liberal pleading standards under the Federal Rules in at least the following respects.

*First*, Plaintiff's pleading of its HARLEY-DAVIDSON trademarks infringement claim (Count I) is patently deficient. Plaintiff asserts that "Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the *HARLEY-DAVIDSON Trademarks* without Harley-Davidson's permission." (Compl. ¶ 40) (emphasis added).) Accusing Come brownie of infringing "HARLEY-DAVIDSON Trademarks" fails to provide Come brownie even basic notice of Plaintiffs' central claim. Plaintiffs cannot be excused from even identifying which trademark or trademarks they are asserting against Come brownie. *See, e.g., Allison Transmission, Inc. v. Fleetpride, Inc.,* No. 1:16-cv-02455-LJM-MJD, 2017 WL 1282994, at *4 (S.D. Ind. Apr. 5, 2017) (granting motion for a more definite statement where the factual allegations at issue failed to provide sufficient notice because complaint "merely allege[d] that [defendant] infringed on 'one or more' . . . trademarks, without further defining to which of its trademarks it refers or how [defendant] actually infringed upon its trademarks").

With respect to Count II, which piggybacks on Plaintiffs' trademark infringement, Plaintiff relies entirely on the legal conclusion that Come brownie's products are creating a likelihood of confusion for unspecified reasons. Attempting to pass off legal conclusions as facts does not state a claim. Plaintiff fails to identify facts supporting the conclusion that the unidentified product or products cause a likelihood of confusion. These failures do not provide adequate notice and fail to state a claim. *See, e.g., Fortres Grand Corp. v. Warner Bros. Entmt. Inc.,* 763 F.3d 696, 700 (7th Cir. 2014) ("Allegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible."); *Varsity News Network, Inc. v. Carty Web Strategies, Inc.,* Case No. CV 17-2574 PSG (Ex), 2018 WL 6137189, at *5 (C.D. Cal. Feb. 13, 2018) (granting motion to

dismiss because "[t]he mere allegation, unaccompanied by factual support, that consumers are likely to mistake a defendant's goods for plaintiff's goods is insufficient to survive a motion to dismiss") (quoting *McCall's Country Canning, Inc. v. Paula Deen Enters., LLC,* No. 09cv0952-LAB (BLM), 2010 WL 11508996, at *2 (S.D. Cal. Feb. 8, 2010)).

In determining whether the use of the mark is likely to cause confusion among consumers a court considers the following seven factors: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists, and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001). No one factor is dispositive and the court balances the seven factors. *Packman,* 267 F.3d at 643. However, the similarity of the marks factor, the actual confusion factor, and the intent factor are particularly important. *CAE, Inc.,* 267 F.3d at 678; *Packman,* 267 F.3d at 643.

The Complaint does not recite any "grounds" for relief against Come brownie. Nor could plaintiff have pleaded a viable cause of action against Come brownie.

**Alternatively, The Case Against Come brownie Should Be Dismissed Because The Mass Joinder Is Inappropriate Under Rule 20(a)(2) and 21**

Under Rule 20(a)(2), defendants may be joined in a single action if two requirements are satisfied: (1) the claims against them must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2)(A)-(B).

As set forth above, when the claims in the Complaint are examined as to Come brownie, it is apparent that Plaintiff has failed to state any legally cognizable claims against

Come brownie. What is also apparent is that Plaintiff has taken permissive joinder pursuant to Rule 20 of the Federal Rules too far. Plaintiff has improperly joined Come brownie into this case, even though Come brownie plainly does not belong in it.

To the extent that joinder here is premised upon the accusation that Come brownie is, with the other 200 defendants, part of a "counterfeiting operation," (Compl. ¶ 3), that premise is a wholly unproved accusation—nothing more. There are two attempts at stating factual connections amongst the Defendants. The first is that, "upon information and belief, [Defendants] reside mainly in the People's Republic of China or other foreign jurisdictions . . ." (Compl. ¶ 24.) The second is that "Defendants concurrently employ and benefit from substantially similar advertising. . ." (Compl. ¶ 29.) These assertions are woefully insufficient to support the incredible notion that "Defendants" are an "interworking" and "counterfeiting operation." It cannot be the case that Chinese or "other foreign" residents can be assumed to be counterfeiters; accordingly, rhetorical assertions about "tactics" typically employed by counterfeiters provide Plaintiff no support at all.

Plaintiff's grouping of Come brownie in this matter with over two hundred unrelated other parties is an abuse of Rule 20 joinder. *See Elmore v. Henderson,* 227 F.3d. 1009, 1012 (7th Cir. 2000) (Posner, J.) ("The purpose of Rule 20(a) in permitting joinder in a single suit of persons who have separate claims, albeit growing out of a single incident, transaction, or series of events, is to enable economies in litigation*, not* to merge the plaintiffs' rights so that the *defendant loses defenses* that he might have had against one of the plaintiffs.") (emphasis added).

This Court has wide discretion in dealing with improper joinder, *see Martinez v. Haleas,* No. 07 C 6112, 2010 WL 1337555, at *4 (N.D. Ill. Mar. 30, 2010) (dismissing newly-added parties pursuant to Rule 21), and the recent decision in *Estee Lauder Cosmetics Ltd. v.*

*P'ships & Unincorporated Assocs. Identified on Schedule A,* 334 F.R.D. 182 (N.D. Ill. 2020) is instructive here. *Estee Lauder,* 334 F.R.D. at 187 (considering *sua sponte* the joinder of dozens of defendants and determining that joinder was improper because "time and again the courts of this District have held that it is not enough for a plaintiff to simply allege that multiple defendants have infringed the same patent or trademark") (citing cases). In reviewing the joinder of the 79 defendants at issue, this Court recognized that the convenience to the plaintiff of joining disparate defendants into a single lawsuit was not sufficient to warrant joinder. *See id.* ("[W]hen viewed from the defense perspective, there is nothing that one defendant could advance in defending a case that would be dependent on an unrelated codefendant. So a blunderbuss theory of joinder would require each trademark-infringement defendant to monitor the docket and the filings pertaining to dozens or hundreds of co-defendants."). The Court further determined that the type of mass grouping of defendants—solely on the basis of alleged infringement of the same intellectual property—would thwart the interests of judicial economy that joinder is meant to promote. *See id.* at 189 ("But presenting dozens or hundreds of defendants in one lawsuit actually undermines judicial economy, because this Court must evaluate the evidence submitted in support of liability and, eventually, damages. That is especially true in the *ex parte* setting of a temporary restraining order, as well as for default-judgment motions. It is much more of a burden to satisfy that duty when there are dozens or hundreds of online retailers named in one case."). In *Estee Lauder,* the Court ultimately ordered those plaintiffs to submit an amended complaint accompanied by a "memorandum explaining specifically why each Defendant is properly joined to all of the others." *Id. at 190.*

In this case, Plaintiff's improper efforts at joinder—when viewed with the overall failure to state a claim—warrant dismissal of the Complaint as to Come brownie. *See Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 683 (7th Cir. 2012) (Easterbrook, J.) ("The

more claims and defendants in a complaint, the longer screening [by the court] will take. The more frivolous claims in a complaint, the more a judge is apt to infer (if only subconsciously) that the plaintiff is crying wolf with respect to all of the claims."); *Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.,* 696 F.2d 53, 58 (7th Cir. 1982) (affirming district court's dismissal of improperly joined defendant).

***

Plaintiff's Complaint is essentially a shell game. Plaintiff appears to believe that by broadly branding Come brownie a "counterfeiter," Plaintiff can evade its most basic responsibility in alleging claims of trademark infringement—demonstrating that Come brownie specifically uses the trademarks at issue. Indeed, as set forth above, Plaintiff cannot make this showing. Plaintiff's attempted shell game should be rejected, and its Complaint dismissed.

**Release of Bond**

Finally, the Court should also authorize release of the bond for the lost sales by Come brownie under the improvidently-sought injunction. This case was a misfire as to Come brownie. Plantiff should not have sought a Preliminary Injunction against it.

"[T]here is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond." *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.,* 16 F.3d 1032, 1036 (9th Cir. 1994); *see also* Fed. R. Civ. P. 65(c). This rebuttable presumption exists in order to "discourage[] parties from requesting injunctions based on tenuous legal grounds" and ensures that "the party enjoined will usually recover damages," thereby compensating a wrongfully enjoined party for the injuries it suffered in not being able to engage in the activity it was wrongfully enjoined from carrying out." Id. at 1037.

22

Accordingly, Come brownie has presented evidence that, over the last weeks since the TRO was granted, it has lost hundreds of dollars per day because of the injunction.

**Additionally, The Court should enter an order to show cause why Plaintiff should not pay Come brownie damages and punitive sanctions**

The Court should enter an order to show cause why Plaintiff should not pay Come brownie damages, plus additional punitive sanctions, pursuant to Rule 65, and pursuant to the Court's equitable powers.

Rule 65 creates a cause of action for parties who have been wrongfully enjoined or restrained, though "damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Mead Johnson & Co. v. Abbott Labs.,* 201 F.3d 883, 888 (7th Cir. 2000). Here there is no doubt that all of the orders Plaintiff sought, were invalid for false statements, and that the preliminary injunction is additionally invalid for lack of notice, at least as to Come brownie, if not all other defendants. Come brownie's costs and damages exceed the $10,000 bond – indeed, Plaintiff froze *thousands* of dollars of Come brownie's funds, which had *nothing* to do with the alleged "counterfeiting" here. (See Declaration of Zhang Hehe at ¶ 3).

The Court should further take note of the false statements and conclusory declarations Plaintiff used to improperly obtain a temporary restraining order and preliminary injunction, and should direct Plaintiff to produce:

- All documents relating to the prosecution of its HARLEY-DAVIDSON formative trademarks, including all of its foreign prosecution files;

- All documents which support any of the declarations submitted in support of the TRO and preliminary injunction motions;

- All documents which demonstrate use of its HARLEY-DAVIDSON formative marks in commerce in the United States, including documents which demonstrate

the date of first use of the mark(s) in connection with each good or service listed in each of Plaintiff's trademark registrations;

- All documents relating to any challenge to the validity of a HARLEY-DAVIDSON formative mark;

- All communications between Plaintiff, or its agents, and third parties (including Amazon), which in any way reference this case or Come brownie;

- All licenses of its HARLEY-DAVIDSON formative marks.

Further, the Court should direct Plaintiff to make each of its declarants available for deposition, within the next 14 days, after production of the documents set forth above. This discovery is necessary to assess whether, and to what extent, Plaintiff and/or its counsel should be sanctioned for the false statements submitted to the Court and also the extent to which Plaintiff embarked on a scheme to seize assets without notice.

The Court should set a show cause hearing to permit the Court to determine the extent of appropriate sanctions for the false statements as to Come brownie, and to permit the Court to assess whether further sanctions, such as dismissal of this entire action, are appropriate.

Come brownie argues that there is a private cause of action for wrongful seizure in counterfeiting cases under 15 U.S.C. § 1116(d)(11); while the original asset freeze issued under the Court's equitable powers, the case law relating to wrongful seizure under 1116(d)(11) is highly relevant. Of course, because the Court issued the original orders under its equitable powers, its equitable powers are also the remedy for Plaintiff's wrongdoing.

Come brownie recognizes, however, that investing additional time and fees in preparing for such a hearing may eclipse the fees already spent. Accordingly, Come brownie has submitted its estimate of costs and damages incurred to date, should the Court simply

decide to award damages based on the present evidence before the Court. (Declaration of Zhang Hehe at ¶ 9).

## **CONCLUSION**

For the reasons argues herein, Defendant Zhang Hehe ("Come brownie") respectfully request that the Court issue an Order (i) dissolving in part the Preliminary Injunction, and unfreeze Come brownie's assets; (ii) release the bond to compensate Come brownie for an improvidently-sought injunction; (iii) dismiss under Fed. R. Civ. P. 12(b)(2), 12(b)(4), 12(b)(5), 12(b)(6) 20(a)(2) and 21 as to Come brownie; (iv) order Plaintiff to immediately contact all relevant third parties and inform them the Preliminary Injunction has been vacated, and to take immediate steps to restore Come brownie's access to all of its funds; (v) within two days after such service is made, Plaintiff so inform the Court and Come brownie; and (vi) granting such other and further relief as the Court may deem just and proper.

Respectfully submitted this 3rd day of August 2021.

_____
/s/*Zhanghehe*
*Defendant Come brownie*

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on the 3rd day of August 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the parties.

_____
/s/*Zhanghehe*
*Defendant Come brownie*

# Exhibit A

2021年7月1日
## Your Amazon.com selling account

Hello from Amazon,

We are writing to inform you that your disbursements from your seller account have been placed on hold. We took this action in accordance with a Temporary Restraining Order issued by a federal court. Items that infringe another party's copyright, patent, trademark, design right, database right, or other intellectual property or other proprietary right are prohibited. For more information on this policy, search on "Prohibited Content" in seller Help.

To resolve this dispute, we suggest that you contact the rights owner directly:

H-D U.S.A., LLC
RiKaleigh Johnson
Greer Burnes & Crain
300 S. Wacker Dr. Suite 2500
Chicago, IL 60606
T: 312-360-0080
F: 312-360-9315

If you resolve this matter with the rights owner, please advise them to contact us to withdraw their complaint.

Please be advised that we are not in a position to provide any further information regarding this action, nor to address any messages directed to us in appeal. We may not respond to further emails about this issue.

Failure to comply with our policies may result in the removal of your Amazon.com selling privileges.

We appreciate your cooperation.

Sincerely,
Seller Performance Team
Amazon.com

# Exhibit B

